786 N.E.2d 590 (2003)
337 Ill. App.3d 391
272 Ill.Dec. 51
In the Interest of E.C. and D.C., Minors (The People of the State of Illinois, Plaintiff-Appellee, v. E.C., Sr., Defendant-Appellant).
No. 1-01-0097.
Appellate Court of Illinois, First District, Third Division.
March 5, 2003.
*592 Randy Crumpton, Chicago, for Appellant.
Patrick T. Murphy, Charles P. Golbert and Deborah Pergament, Office of the Cook County Public Guardian; Richard A. Devine, State's Attorney of Cook County (Renee Goldfarb, Nancy Grauer Kisicki and Peter Maltese, of counsel), Chicago, for Appellees.
Justice WOLFSON delivered the opinion of the court:
Following a hearing, the circuit court found respondent, Eddie C. Sr., to be an unfit parent to his children, Eddie C. and Darryl C., based on his repeated incarceration as a result of criminal convictions, which prevented the discharge of his parental duties. 750 ILCS 50/1(D)(s) (West 1998). The court granted the State's motion for summary judgment on this issue. At a subsequent hearing, the court held it was in the best interest of the minors to terminate respondent's parental rights.
Respondent contends on appeal: (1) the trial court erred in granting summary judgment for the State because there was a genuine issue of material fact; (2) the trial court erred in allowing the State to amend its petition to include an allegation that would apply retroactively to respondent; and (3) the court's decision to terminate his parental rights was against the manifest weight of the evidence. We affirm.

FACTS
Eddie was born on March 18, 1988; Darryl was born on June 17, 1989.[1] A finding of neglect was entered for both children on September 12, 1990. Respondent and the children's mother, Zina C., who is not a party to this appeal, were found unable, for some reason other than financial circumstances alone, and unwilling, to care for, protect, train, or discipline the boys. On December 18, 1990, the children were adjudicated wards of the court and placed under the guardianship of the Department of Children and Family Services (DCFS).
The State filed petitions on September 18, 1998, for termination of parental rights and appointment of a guardian with right to consent to adoption. The petitions alleged respondent was an unfit parent because he abandoned the children; failed to maintain a reasonable degree of interest, concern or responsibility as to their welfare; failed to protect them from conditions in the environment injurious to the children's welfare; behaved in a depraved manner; failed to make reasonable efforts to correct the conditions which were the basis of removal of the children or to make reasonable progress toward the return of the children within nine months of the adjudication of neglect; and evidenced intent to forego his parental rights as manifested by his failure for 12 months to visit the children, communicate with them or their agency, and to maintain contact with them or plan for their future, in violation of subsections 50/1(D)(a, b, g, i, m, and n) of the Adoption Act and section 2-29 of the Juvenile Court Act. 750 ILCS 50/1(D)(a), *593 (b), (g), (i), (m), (n) (West 1998); 705 ILCS 405/2-29 (West 1998).
The State filed a motion to amend its petition on June 2, 2000, seeking to include two additional allegations. Under subsection 1(D)(r) of the Adoption Act, the State alleged respondent was incarcerated as a result of criminal conviction at the time the petition was filed, prior to incarceration he had little or no contact with the children and provided little or no support for them, and his incarceration would prevent him from discharging his parental responsibilities for more than two years after filing of the petition. 750 ILCS 50/1(D)(r) (West 1998); 705 ILCS 405/2-29 (West 1998). The State also alleged under subsection 1(D)(s), respondent was incarcerated at the time of filing of the petition, has been repeatedly incarcerated as a result of criminal convictions, and his repeated incarceration has prevented him from discharging his parental responsibilities for the children. 750 ILCS 50/1(D)(s) (West 1998); 705 ILCS 405/2-29 (West 1998).
The State also filed a motion for summary judgment on June 6, 2000, contending no genuine issue of material fact exists, that the court should find respondent unfit as a matter of law. The State attached certified copies of respondent's three criminal convictionspossessing a stolen motor vehicle in 1994, burglary in 1993, and battery in 1989. Respondent was sentenced to three years, twelve years, and 250 days, respectively, for these convictions. The three-year and twelve-year sentences were to be served concurrently. The motion alleged respondent was currently incarcerated and was not scheduled for release until September 9, 2002.
Respondent filed a motion to strike the affidavits attached to the summary judgment motion, contending they were not based on the affiants' personal knowledge, but on information and belief. Respondent also filed a motion for involuntary dismissal under section 2-619(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(9) (West 2000)), contending the additional grounds of unfitness alleged by the State under subsections 1(D)(r) and 1(D)(s) became effective July 30, 1998,[2] and could not be applied retroactively to respondent.
On July 17, 2000, the court held a hearing on the State's motion to amend the petition for termination of parental rights and motion for summary judgment. After hearing testimony from Mary Witherspoon, the children's foster parent, and Monese DeRamus, the children's caseworker, the court denied respondent's motion to strike the affidavits.[3] The court also allowed the State's motion to amend the petition for termination of parental rights to include the additional allegations.
On August 7, 2000, respondent filed a response to the summary judgment motion, contending he repeatedly sought visitation with his children, attempted to maintain contact and plan for his children's future, and never had the requisite intent to abandon his children or forego his parental rights. Respondent also contended the State's motion failed to establish he had been incarcerated more than once for a criminal conviction. Respondent attached a personal affidavit, contending *594 since his incarceration in 1994 he had been unable to visit his children except on court dates. He had repeatedly sought visitation with the children by asking the foster mother and DCFS workers and seeking court orders, but he was denied all visitation. Finally, since his incarceration he had attempted to maintain contact with and plan for his children's future through written and verbal communication with their mother, foster mother, and DCFS workers. Before his incarceration, he provided for the support of the children and had frequent contact with them.
On September 19, 2000, after hearing arguments from all sides, the court granted summary judgment for the State on one of the added grounds. The court found by clear and convincing evidence respondent was unfit based on subsection 1(D)(s), because his repeated incarceration as a result of criminal convictions prevented him from discharging his parental responsibilities. 750 ILCS 50/1(D)(s) (West 1998); 705 ILCS 405/2-29 (West 1998). The court denied summary judgment on the other grounds in the State's petition.
On December 12, 2000, the State elected not to proceed on any of the additional allegations of unfitness against respondent. At the best interest hearing, Thetis Cromie, a psychotherapist, testified she had been counseling the children since May of 1997. They were referred to her for anxiety and behavioral problems as a result of past neglect and abuse. The boys' problems at the time of referral included bed-wetting, problems focusing and concentrating, and behavioral disturbances. The boys both expressed strong anxiety and fear regarding visiting respondent. Since her assignment to the case, the boys had not visited respondent nor requested visits with him. Cromie testified the boys were attached to their foster parents and expressed a desire to remain with them until adulthood. In Cromie's opinion, the children's placement with the foster parents was a nurturing and protective environment, and it would be traumatic for them to be removed from that placement. She said Darryl supported the idea of terminating his father's rights because he was afraid of him and did not want to visit him. Eddie did not want his father's rights terminated but did not give a reason.
DeRamus testified she had been assigned as the children's caseworker since October 1997. To her knowledge, their last visit with respondent was in April 1995 at the Cook County Jail. Since then, no visits had taken place because the children did not wish to visit respondent. Respondent had no contact with the children by phone or mail. Respondent had sporadically sent letters to the foster parents but was ordered to stop by the court because the letters were inappropriate. The children had been in their current foster home since April 1991. DeRamus testified the home was safe and appropriate.
Beverly Gordon, a DCFS employee, testified she was assigned to the family's case from 1995 until September 1998. On February 25, 1998, she conducted a visit between respondent and two siblings of Eddie and Darryl. Respondent was verbally abusive toward Gordon and threatened her in front of the children. Gordon testified she and the children were frightened by respondent.
DCFS employee Chris Cunningham testified he had been assigned to the family's case since September 1998. He said he offered respondent services in 1998, but respondent was not interested. Since that time, respondent had not been offered services or provided any verification that he had received therapy.
Witherspoon testified she had been the children's foster parent since April of 1991. Between 1991 and 1994, before respondent *595 was incarcerated, he had infrequent visits with the children. Both the children's mother and respondent were present for most of the visits. After one visit with respondent alone, Darryl was hysterical and crying. Eddie told her respondent had slapped Darryl when he would not stop crying. In April 1995, the children visited respondent in jail. After that visit, Witherspoon said they were traumatized and started bed-wetting. They were prescribed medication and received counseling.
Witherspoon testified respondent sent her six or seven letters. The letters made her uncomfortable because they were too personal to send to a married person. In one letter, respondent requested that she visit him in prison to see what her "mind set" was toward the children. Witherspoon testified it was her desire to raise Eddie and Darryl to adulthood, and her husband agreed. She did not want to adopt the boys or become their guardian because she did not want to deal with any hostility from respondent.
Respondent testified he thought the Witherspoons had done an outstanding job raising the children. He would not object to them adopting the children. He denied ever slapping Darryl during a visit. He also denied threatening Gordon during the visit at the jail. He said he attempted to call Cunningham several times to discuss a service plan but was not able to reach him. Respondent also attempted to call DeRamus several times to arrange visitation. Respondent said he did not want the boys to be forced to come to jail for visits. He loves the boys, and he would want to visit them when he is released if they desire to see him.
On cross-examination, respondent testified his release date from prison had been extended from the beginning of 2001 until 2002 because he had received disciplinary tickets. Since his incarceration, he received an average of two tickets each year. One of the tickets was for contact with an officer when he jumped out of a chair during a dental visit. Other tickets were for intimidation or delay in going to work. Respondent testified the battery for which he was convicted in 1989 was against his daughter, but he said he was "guilty by association" because it took place in his house.
The court then found it was in the best interest of the children to terminate respondent's parental rights. The judge said respondent by his incarceration had absented himself from a significant portion of his sons' lives. His criminal history included a conviction for battery to a child. By the time of his scheduled release, his sons would be 13 and 14 years old. Respondent's conduct while in custody had not shown he was willing to change his behavior in order to have his children returned to him. In addition, there was consistent testimony regarding the fear the boys felt toward their father and their unwillingness to visit him.

DECISION

I. SUMMARY JUDGMENT
Respondent first contends the court erred in granting the State's motion for summary judgment because this case presents genuine issues of fact. Juvenile court proceedings based on allegations of abuse or neglect are civil in nature; parties in such juvenile cases may move for summary judgment in their favor. In re S.W., 315 Ill.App.3d 1153, 1157, 249 Ill. Dec. 102, 735 N.E.2d 706 (2000). Summary judgment is a drastic measure and should be granted only where the pleadings, depositions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. First of America Trust Co. *596 v. First Illini Bancorp., Inc., 289 Ill. App.3d 276, 283, 226 Ill.Dec. 248, 685 N.E.2d 351 (1997). We conduct a de novo review of the trial court's decision to grant summary judgment.
A parent's rights may be terminated only upon proof, by clear and convincing evidence, that the parent is unfit. In re Adoption of Syck, 138 Ill.2d 255, 274-75, 149 Ill.Dec. 710, 562 N.E.2d 174 (1990). This determination must be made prior to a consideration of the child's best interest. Syck, 138 Ill.2d at 273-74, 149 Ill.Dec. 710, 562 N.E.2d 174. The State must establish the existence of at least one statutory ground of unfitness, as defined in section 1(D) of the Adoption Act (750 ILCS 50/1 (West 1998)). In re D.D., 196 Ill.2d 405, 417, 256 Ill.Dec. 870, 752 N.E.2d 1112 (2001). A court's determination of parental unfitness will not be disturbed on review unless it is against the manifest weight of the evidence. In re D.D., 196 Ill.2d at 417, 256 Ill.Dec. 870, 752 N.E.2d 1112. A decision is against the manifest weight of the evidence where the opposite conclusion is clearly the proper result. In re D.D., 196 Ill.2d at 417, 256 Ill.Dec. 870, 752 N.E.2d 1112.
Respondent relies on his affidavit in support of his response to the motion for summary judgment. In his affidavit, respondent contended he had a relationship with his children before his incarceration. He said he maintained contact and discharged his parental responsibilities through the children's mother, foster mother, and caseworkers. Respondent contends these assertions present genuine issues of fact precluding summary judgment. He also contends the State failed to establish his repeated and continuous incarceration prevented him from discharging his parental responsibilities.
The court granted summary judgment to the State on the ground of unfitness established in subsection 1(D)(s) of the Adoption Act, which provides a parent is unfit where:
"[t]he child is in the temporary custody or guardianship of [DCFS], the parent is incarcerated at the time the petition or motion for termination of parental rights is filed, the parent has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented the parent from discharging his or her parental responsibilities for the child." 750 ILCS 50/1(D)(s) (West 1998).
In support of its summary judgment motion, the State attached an affidavit from Witherspoon, the foster mother. Witherspoon said respondent had not visited the children since 1993. Specifically within the period of June to September of 1998 and within the last 12 months, respondent had no contact or visits with the children. The State also attached certified statements of respondent's three convictions and the affidavit of Debra Berry, the record office supervisor at the Joliet Correctional Center. Berry affirmed the correctness of the attached copy of respondent's inmate movement history inquiry printout from the Offender Tracking System. According to her records, respondent was scheduled to be released on September 9, 2002. The statements of conviction show respondent had been incarcerated since 1994 and was incarcerated when the petition to terminate parental rights was filed in 1998.
The trial court found the motion for summary judgment and attachments established grounds for unfitness under subsection 1(D)(s). In this case, there was no genuine issue of material fact as to respondent's unfitness under the statute. Respondent's bald assertions in his affidavit that he maintained contact with the children and discharged his parental responsibilities *597 through the mother, foster mother, and caseworkers are factually unsupported and insufficient to overcome summary judgment. Respondent has not articulated any facts to show when or how he discharged his responsibilities. As the trial judge correctly asserted, respondent had been incarcerated for the majority of his sons' lives and was unable to provide a stable home or provide them with discipline, love, bonding, or closeness. This shows that respondent's repeated incarceration prevented him from discharging his parental responsibilities.
In In re M.P., 324 Ill.App.3d 686, 693-94, 258 Ill.Dec. 244, 755 N.E.2d 1063 (2001), the court held repeated incarceration alone is enough for an indication of unfitness pursuant to subsection 1(D)(s). A finding of unfitness is warranted where the repeated incarceration has prevented the parent from providing the minors with the necessary emotional and financial support and stability required of a parent. In re M.P., 324 Ill.App.3d at 693, 258 Ill.Dec. 244, 755 N.E.2d 1063. See also In re M.M.J., 313 Ill.App.3d 352, 355, 245 Ill. Dec. 880, 728 N.E.2d 1237 (2000) ("Being a parent involves more than attending a few visits and sending an occasional gift to the child. The child needs a positive, caring role model present in her life. This ground for unfitness [repeated incarceration] may be utilized regardless of respondent father's efforts, compliance with DCFS tasks and satisfactory attainment of goals, or the amount of interest he has shown in his daughter's welfare").
In his response to the motion for summary judgment, respondent argued the State had not proven he had been incarcerated as a result of more than one conviction. Although he has not re-asserted this argument on appeal, we will address it. Respondent's argument is factually inaccurate. Although he was sentenced only to time served in his 1989 conviction for battery, reduced from an aggravated battery, he still was incarcerated as a result of his conviction. Similarly, his concurrent sentences of three years and twelve years were for two separate convictionspossession of a stolen motor vehicle and burglary. Nevertheless, only one incarceration is necessary for a finding of unfitness under subsection 1(D)(s) if the court finds the parent was prevented from discharging his responsibilities. In re D.D., 196 Ill.2d at 420-22, 256 Ill.Dec. 870, 752 N.E.2d 1112. In In re D.D., the court held by the legislature's use of the term "repeated incarceration," rather than the plural "incarcerations," courts may consider the overall impact of the parent's incarceration, such as the diminished capacity to provide financial, physical, and emotional support for the child. 196 Ill.2d at 421, 256 Ill.Dec. 870, 752 N.E.2d 1112.
Here, the evidence established the boys were in the temporary custody and guardianship of DCFS, respondent was incarcerated at the time the petition for termination of parental rights was filed, and respondent had been repeatedly incarcerated as a result of criminal convictions. The finding of parental unfitness was not against the manifest weight of the evidence.

II. RETROACTIVITY
Respondent next contends the trial court erred in allowing the State to amend its petition for termination of parental rights to include an allegation under subsection 1(D)(s) of the Adoption Act. Although respondent in his motion for involuntary dismissal contended the statute was amended on July 30, 1998, subsection 1(D)(s) actually became effective January 1, 1998, by Public Act 90-28. See In re D.D., 196 Ill.2d at 418, 256 Ill.Dec. 870, 752 N.E.2d 1112; In re M.P., 324 Ill.App.3d at *598 692, 258 Ill.Dec. 244, 755 N.E.2d 1063. Respondent contends the State may not apply this subsection retroactively to him because the State's petition to terminate parental rights was based on actions he took prior to the passage of subsection 1(D)(s). He also contends the retroactive application of the statute violates due process by interfering with his vested right to custody of his children.
A reviewing court should apply the law as it exists at the time of appeal unless doing so would interfere with a vested right. First of America Trust Co. v. Armstead, 171 Ill.2d 282, 290, 215 Ill. Dec. 639, 664 N.E.2d 36 (1996). A vested right is a right that is protected from legislative interference by the due process clause of the Illinois Constitution. In re S.W., 315 Ill.App.3d at 1156, 249 Ill.Dec. 102, 735 N.E.2d 706.
This court has made clear that a parent's right or interest in his or her child is not an absolute vested right. In re T.Y. & T.Y., 334 Ill.App.3d 894, 907-08, 268 Ill. Dec. 590, 778 N.E.2d 1212 (2002); In the Interest of J.B. & T.B., 328 Ill.App.3d 175, 184, 262 Ill.Dec. 485, 765 N.E.2d 1093 (2002); In re S.W., 315 Ill.App.3d 1153, 1156, 249 Ill.Dec. 102, 735 N.E.2d 706 (2000); In re Sheltanya S., 309 Ill.App.3d 941, 950, 243 Ill.Dec. 441, 723 N.E.2d 744 (1999); In re Ladewig, 34 Ill.App.3d 393, 398, 340 N.E.2d 150 (1975).
In In re S.W., the respondent father contended that because section 1(D)(i) of the Adoption Act was added to the statute after the State filed a petition to terminate parental rights, the section did not apply to him and interfered with his vested right to a relationship with his child. In re S.W., 315 Ill.App.3d at 1156, 249 Ill.Dec. 102, 735 N.E.2d 706. This court held section 1(D) is a list of the statutory grounds that will support a finding of unfitness; it is not a list of parental rights. The legislature has an "ongoing right" to amend a statute to include rebuttable presumptions which may be applied retroactively. The court applied the statute, therefore, because a parent's right or interest in his child does not amount to an absolute, vested right. In re S.W., 315 Ill.App.3d at 1156-57, 249 Ill.Dec. 102, 735 N.E.2d 706. See also In re T.Y. & T.Y., 334 Ill.App.3d at 907-08, 268 Ill.Dec. 590, 778 N.E.2d 1212 (trial court was correct in applying section 1(D)(m) retroactively to respondents because no vested right of parents was affected); In the Interest of J.B., 328 Ill.App.3d at 185-86, 262 Ill.Dec. 485, 765 N.E.2d 1093 (because respondent's interest in raising her children was not a vested right, court applied section 1(D)(q) retroactively to respondent).
Respondent's contention that retroactive application of section 1(D)(s) interferes with his vested right in his children clearly must fail under Illinois law.

III. TERMINATION OF PARENTAL RIGHTS
Finally, respondent appeals from the court's termination of his parental rights. Once the trial court finds a parent is unfit, it proceeds to conduct a hearing to determine whether termination of parental rights is in the best interests of the child. In re M.A., 325 Ill.App.3d 387, 390, 258 Ill.Dec. 924, 757 N.E.2d 613 (2001). The decision to terminate parental rights will not be disturbed absent an abuse of the trial court's discretion. In re Sheltanya S., 309 Ill.App.3d at 955, 243 Ill.Dec. 441, 723 N.E.2d 744.
In this case, the evidence at the best interest hearing established that the children have been living with the same foster parents since 1991. They are attached to their foster parents and have expressed a desire to remain with them until adulthood. *599 The children's counselor, Cromie, testified the home provided a nurturing and protective environment for the children, and it would be traumatic for them to be removed from that placement. Several witnesses testified the children do not wish to visit their father and are afraid of their father.
Respondent contends the decision to terminate parental rights was in error because the foster parent does not wish to adopt the children. The foster mother testified she has decided she does not want to adopt the children because she fears respondent's hostility toward her. However, she would like to raise the children until adulthood. This court held in In re B.S., 317 Ill.App.3d 650, 665, 251 Ill.Dec. 323, 740 N.E.2d 404 (2000), that the current availability of an adoptive home is one of the considerations when deciding whether termination of a parent's rights is in the best interests of a child, but it is not the only one. The trial court must decide which is the better alternative. Here, as in In re B.S., the court found the better alternative was to "give the children a chance for some permanency in their lives, even if that meant they were not adopted, but continued to have a secure and stable home environment with the foster family they had been with for some years." In re B.S., 317 Ill.App.3d at 665, 251 Ill.Dec. 323, 740 N.E.2d 404.
Respondent also contends termination was inappropriate because he was an important part of the children's lives before he was incarcerated and attempted to maintain contact with them during his incarceration. The evidence at the best interest hearing suggested otherwise. The evidence showed respondent visited the children only sporadically before his incarceration. He has not visited the children since 1995, and the children are in fear of him and do not wish to visit him.
The court's decision to terminate respondent's parental rights was not an abuse of discretion.
CONCLUSION
We affirm the trial court's decision. The court did not err in granting summary judgment for the state where the uncontradicted evidence supported a finding of respondent's unfitness under section 1(D)(s) of the Adoption Act. There was no improper retroactive application of the statute to respondent because his right to custody of his children is not a vested right. Finally, the court did not abuse its discretion in terminating respondent's parental rights because the evidence at the hearing established termination was in the best interests of the children.
Affirmed.
SOUTH, P.J., and HALL, J., concur.
NOTES
[1] Dates of birth are taken from the State's petitions for adjudication of wardship. The minors' birthdays are alternately stated in the record as August 18, 1988 for Eddie, and June 2, 1989, for Darryl.
[2] A parent's repeated conviction and incarceration was added to the definition of "unfit person" in section 1(D) of the Adoption Act by Public Act 90-28, effective January 1, 1998. See In re D.D., 196 Ill.2d 405, 418, 256 Ill. Dec. 870, 752 N.E.2d 1112 (2001); In re M.P., 324 Ill.App.3d 686, 692, 258 Ill.Dec. 244, 755 N.E.2d 1063 (2001).
[3] DeRamus' affidavit related to the children's natural mother and is not relevant to respondent's case.