**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210110-U

Order filed July 22, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* Da. W., Dy. W., & S.W., | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Minors, | ) | Henry County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal Nos. 3-21-0110, 3-21-0111, |
| Petitioner-Appellee, | ) | & 3-21-0112 cons. |
| | ) | Circuit Nos. 18-JA-17, 18-JA-18, |
| v. | ) | & 18-JA-19 |
| | ) | |
| Autumn I., | ) | Honorable |
| | ) | Terence M. Patton, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justices O'Brien and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1  *Held*:  Trial court's finding of parental unfitness was not against the manifest weight of the evidence.

¶ 2  Respondent, Autumn I., appeals from orders of the Henry County circuit court finding her to be an unfit parent of her minor children, Da. W., Dy. W., and S.W., under sections 1(D)(b), 1(D)(k), and 1(D)(m)(i) of the Adoption Act (750 ILCS 50/1(D)(b), 1(D)(k), 1(D)(m)(i) (West

2020)) and terminating her parental rights. We consolidated the appeals. On appeal, respondent claims that the trial court's findings that she: (1) failed to maintain a reasonable degree of interest, concern, or responsibility; (2) was habitually drunk or addicted to drugs for at least one year preceding the unfitness proceeding; and (3) failed to make reasonable efforts in any nine-month period following adjudication were against the manifest weight of the evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On April 16, 2018, the State filed three separate petitions for adjudication of wardship alleging that Da. W. (born January 3, 2009), Dy. W. (born November 14, 2011), and S.W. (born December 16, 2017) were neglected minors due to an environment injurious to their welfare (705 ILCS 405/2-3 (West 2018)). The petitions included allegations that respondent had no current place of residence, that she had resided in a house leased to another individual who had been evicted, and that police were called to evict respondent on April 11, 2018. The petitions stated that when officers arrived, they found the children unsupervised, that Da. W. was in possession of a sawed-off shotgun and several pocketknives, that the home was in "shambles," and that respondent reported she had not been home in three days. The petitions further alleged that on April 12, 2018, a Department of Children and Family Services (DCFS) investigator made contact with respondent and informed her that DCFS needed to assess the children's well-being. Respondent fled with the children to avoid the investigation. The children were located several hours later by police and taken to the hospital for evaluation. They were found to be "filthy" in both body and clothing. They were covered in scabies, lice, and bed bugs, and they were not wearing underwear. In addition, the petitions alleged that the minors had not been enrolled in school and that school officials reported they were not aware of the family's residence. The petition for adjudication of

2

wardship of S.W. included allegations that respondent told DCFS that S.W. was living with a woman named "Rachel." When police located S.W., she was living with Paige Garrigan.

¶ 5 The trial court conducted a shelter care hearing the same day the petitions were filed and entered an order placing temporary custody of the children with DCFS. The order also instructed respondent to comply with DCFS requirements.

¶ 6 On September 18, 2018, DCFS established a service plan for respondent. According to the plan, respondent was required to provide DCFS with medical information regarding the children, address substance abuse issues and follow all treatment recommendations, ensure that the children's school records were accessible, obtain suitable housing, communicate with the caseworker, and participate in weekly visitation.

¶ 7 The trial court conducted an adjudicatory hearing on September 26, 2018 and entered an order finding that the children were neglected and that the allegations in the petitions had been proved by a preponderance of the evidence. On November 14, 2018, the trial court entered a dispositional order finding respondent unfit for dispositional purposes. The court made the minors wards of the court, placed them in the custody of DCFS, and set a permanency goal of return home within 12 months. In the order, the court admonished respondent to (1) cooperate with DCFS, (2) comply with the terms of the service plan, and (3) correct the conditions that required the minors to be placed in the custody of DCFS or risk termination of her parental rights.

¶ 8 The trial court held permanency review hearings on May 8, 2019, and November 13, 2019. At the conclusion of both hearings, the court found that respondent had not made reasonable and substantial progress or reasonable and substantial efforts toward returning the minors home.

¶ 9 On December 10, 2019, the State filed three identical petitions to terminate respondent's parental rights in each child's name. The petitions alleged that respondent was an unfit parent

under the Adoption Act because she: (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) failed to protect the children from conditions within their environment injurious to their welfare (750 ILCS 50/1(D)(g) (West 2018)); (3) was habitually drunk or addicted to drugs for at least one year immediately prior to the commencement of the unfitness proceeding (750 ILCS 50/1(D)(k) (West 2018)); and (4) failed to make reasonable efforts to correct the conditions that brought the children into care (750 ILCS 50/1(D)(m)(i) (West 2018)). The petitions also alleged that it was in the children's best interests to terminate respondent's parental rights.

¶ 10       A hearing was held on the petitions to terminate on August 27, 2020. The State called Kelly Sanchez, a DCFS caseworker. Sanchez testified that she had been assigned to the minors' case since April 13, 2018, after the reported incidents on April 11 and April 12, 2018. The children came into DCFS care because of risk of harm, inadequate shelter, and lack of supervision. Sanchez determined that the children were unsupervised because the parents were using drugs and were homeless. On April 16, 2018, Sanchez requested that respondent submit to a drug test, and respondent refused. Respondent subsequently tested positive for methamphetamine on April 20, 2018. Respondent also admitted to using marijuana.

¶ 11       Sanchez testified that respondent consistently visited her children until she went to jail. She did miss one or two visits, but she was otherwise consistent when she was not incarcerated. Respondent had one visit with the children with a therapist on July 22, 2019, but missed the others. She started visiting the children by video due to COVID-19 after June 2, 2020. Since that time, she attended three therapeutic visits with the children as scheduled in the month and a half before the hearing.

¶ 12    Sanchez further testified that respondent was unable to provide accurate medical or educational information about the children. Respondent also failed to obtain stable housing. At the time of the hearing, respondent was staying with her father in Kewanee and a friend in Springfield. Sanchez discovered that one of the homes where respondent was residing was the site of an arrest regarding a methamphetamine charge. Sanchez indicated that DCFS provided resources for locating housing, but respondent did not take advantage of the resources.

¶ 13    Sanchez also testified that respondent was incarcerated in the Henry County jail from August 2018 until February 2019, during which she did not complete the substance abuse services that were available to her. Respondent was also asked to engage in mental health services, which she did not complete. After respondent was released from the Henry County jail in early 2019, she was not consistent in communicating with Sanchez. DCFS attempted to reach out to respondent regarding visits and meetings but received no response. During the time respondent was not incarcerated, she refused nine requested drug tests. Between March 2019 and early 2020, respondent did not attend any visits with the children. Respondent completed her substance abuse treatment on June 2, 2020. Sanchez opined that, at the time of the hearing, respondent was not in compliance with the DCFS service recommendations.

¶ 14    On cross-examination by respondent's counsel, Sanchez testified that respondent was in prison in North Carolina from August 2019 to June 2, 2020. After she returned to Illinois, respondent waited several weeks before notifying DCFS that she was back in Illinois. She resumed visitation shortly after returning. However, her communication with Sanchez was again inconsistent. She asked about the children but did not follow through with what was asked of her. Since her release, respondent reported to Sanchez that she had employment. She was also asked to complete a urinalysis in July 2020, which was positive for methamphetamine. During respondent's

5

visits, the only concern Sanchez had was respondent's discussion of her substance abuse issues with the children. Otherwise, she interacted with the children appropriately. Sanchez noted that the children did not appear bonded with respondent and were very distant with her.

¶ 15 On cross-examination by the guardian *ad litem* (GAL), Sanchez stated that respondent wrote letters to the children monthly or every two months while she was incarcerated. However, while she was in prison, respondent never asked how the children were doing in school or about their mental or physical health. Sanchez testified that there was never a nine-month period where respondent maintained appropriate housing.

¶ 16 On redirect, Sanchez acknowledged that respondent had reported employment since her release but testified that she was unable to verify her claim.

¶ 17 Kelli Griffith, a clinical counselor who treated respondent, testified that DCFS requested that she arrange therapeutic visits with respondent and the children. There was one visit in 2019, and the second visit was on July 13, 2020. According to Griffith, the children were happy to see their mother and respondent interacted with them in a positive manner. However, the children did not have a bond with her because they had been in care for a long time.

¶ 18 Respondent testified that she had seven children with Jesse W., three of which were Dy. W., Da. W., and S.W. Respondent and the children were living with a friend in April 2018. The family had just moved to the area from North Carolina. Respondent gave birth to her daughter, S.W., shortly after they moved to Illinois. She was a stay-at-home mother who occasionally worked with her husband. She and the children were living in a "nice country home" with furniture and running water. Respondent cooked and cleaned and cared for the children. She testified that she was in the process of getting the children's school records transferred from North Carolina to Illinois. Respondent admitted that she tested positive for drugs in April 2018. She claimed she

6

was not "fully addicted" to drugs at that time. She maintained that she never refused nine drug tests. She stated that there were times she did not have a ride and that currently she did not have a vehicle.

¶ 19　　Respondent further testified she was first incarcerated in North Carolina in August of 2018. She was charged with larceny in North Carolina and was charged with child abduction in Illinois. She was held in jail in Illinois until December 2018, and then she was transferred to the Department of Corrections in North Carolina until February 17, 2019. She was extradited back to Illinois in March 2019. She testified that she received a new charge in Illinois for delivery of methamphetamine in August 2019. North Carolina revoked her parole due to that charge. Respondent admitted that she missed some of her visitation after July 2019 because she found out a warrant had been issued against her and she was avoiding arrest.

¶ 20　　Respondent asserted that she provided all of the medical information for her children. Her five-year-old son and fourteen-year-old son lived with their grandmother in North Carolina, as did her son who was born while she was incarcerated in North Carolina. Since her release from custody, respondent lived with her father in Illinois and she could live with him as long as she needed. She completed "drug rehab" while she was incarcerated, and she had an appointment for November 15, 2020, for mental health counseling. Respondent testified that she asked Sanchez for help scheduling services, but Sanchez never got back to her.

¶ 21　　On cross-examination, respondent testified that Da. W. had been shot in the back with a BB gun and that his injuries required surgery. He was in the hospital for two-and-a-half to three months, but she could not recall the specific dates.

¶ 22　　On cross-examination by the GAL, respondent testified that the last time she used methamphetamine was in 2019. She claimed she tested positive for methamphetamine in 2020

because she was using Albuterol. On examination by the trial court, respondent admitted that she missed four visits when she had an outstanding arrest warrant.

¶ 23    The trial court found by clear and convincing evidence that the State met its burden of proving respondent's unfitness based on (1) failure to maintain a reasonable degree of interest, concern, or responsibility; (2) habitual drunkenness or addiction to drugs for at least one year prior to the filing of the petition to terminate; and (3) failure to make reasonable efforts in any nine-month period following adjudication. The trial court acknowledged respondent's attempts to communicate with the children while she was in jail. Nevertheless, the trial court found that her behavior and her poor choices, which caused her to be repeatedly incarcerated, made it difficult for her to maintain a reasonable degree of interest, concern, or responsibility toward her children and demonstrated that she failed to put forth reasonable efforts for the period identified in the petition. The court also reviewed the missed drug tests and the positive results for methamphetamine and found that the State proved respondent's addiction to drugs for at least one year by clear and convincing evidence. However, the trial court concluded that the State did not successfully prove the allegation of respondent's failure to protect the children from injurious conditions within their environment due to the lack of evidence presented at the fitness hearing.

¶ 24    Following a best interest hearing, the trial court concluded that respondent's parental rights should be terminated. Respondent appeals only the trial court's finding of unfitness.

¶ 25                                  II. ANALYSIS

¶ 26    Respondent claims that the trial court committed reversible error by finding her unfit. She argues that the trial court's findings that she (1) failed to maintain a reasonable degree of interest, concern, or responsibility; (2) was addicted to drugs for at least one year prior to the filing of the

8

petition to terminate; and (3) failed to make reasonable efforts in any nine-month period following adjudication were against the manifest weight of the evidence.

¶ 27 A parent's rights may be terminated only upon proof, by clear and convincing evidence, that the parent is unfit. 705 ILCS 405/2-29(4) (West 2020); *In re C.N.*, 196 Ill. 2d 181, 208 (2001). A fitness determination must be made prior to consideration of the child's best interest. *In re E.C.*, 337 Ill. App. 3d 391, 401 (2003). On appeal, we will only reverse the trial court's finding of unfitness if the finding is against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d at 208. A decision is against the manifest weight of the evidence where the opposite conclusion is clearly the proper result. *Id.*

¶ 28 A "finding of unfitness will stand if supported by any one of the statutory grounds set forth in section 1(D) of the Adoption Act." *In re Konstantinos H.*, 387 Ill. App. 3d 192, 203-04 (2008). Those grounds include failure to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare. See 750 ILCS 50/1(D)(b) (West 2020). Any of the three elements—interests, concern, or responsibility—may be considered on its own as a basis for unfitness. *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004). When evaluating these elements, the trial court should focus on a parent's reasonable efforts to visit and maintain contact with the minor and consider any circumstances that may have made it difficult for the parent to visit, communicate with, or show interest in the minor. *Id.* Other indicia of interest include inquiries into the child's welfare. *In re C.E.*, 406 Ill. App. 3d 97, 108 (2010). Alternative methods of communication, such as letters, telephone calls, and gifts, can demonstrate a reasonable degree of interest, concern, or responsibility, depending on the circumstances. *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 35. However, a parent is not fit merely because she has demonstrated some interest or affection toward

9

her child. *Id.* To find a parent fit, the parent's level of interest, concern, or responsibility must be objectively reasonable. *Id.*

¶ 29    Here, the State alleged respondent was an unfit parent because she failed to maintain a reasonable degree of interest, concern, or responsibility as to her children's welfare. The evidence at the fitness hearing demonstrated that respondent failed to attend visitation for months at a time due to her incarceration and that, even when she was not incarcerated, she missed several visits to avoid arrest. Respondent contacted the caseworker to re-establish visits after she was released from prison in North Carolina. However, her communication with DCFS was inconsistent. Although she asked about the children after her release, she failed to comply with directives in the service plan to regain custody. She was unable to obtain stable housing, and DCFS was unable to verify her employment. She also failed to comply with nine random drug tests and tested positive for methamphetamine more than once, the most recent positive test occurring only weeks after she completed her prison term in North Carolina. While we acknowledge respondent's efforts to communicate with her children during her incarceration, writing letters to them once a month does not demonstrate a reasonable level of interest or concern or responsibility. When given the opportunity, respondent could not provide the name of the children's pediatrician, the dates of Da. W.'s hospitalization, the children's medical records, or the children's enrollment records for school. For these reasons, we agree with the trial court's finding that respondent failed to maintain a reasonable degree of interest, concern, or reasonability for their well-being. Thus, the trial court's finding that respondent was unfit was not against the manifest weigh of the evidence. Since the State was only required to prove one ground of unfitness, it is not necessary to address the other grounds challenged on appeal.

¶ 30                                    III. CONCLUSION

10

¶ 31    The judgment of the circuit court of Henry County is affirmed.

¶ 32    Affirmed.