**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210337-U

Order filed December 22, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* Gi. G., Ga. G., and G.G., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Minors, | ) | Will County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal Nos. 3-21-0337, 3-21-0338, |
| Petitioner-Appellee, | ) | & 3-21-0339 (cons.) |
| | ) | Circuit Nos. 18-JA-79, 18-JA-80, |
| v. | ) | & 18-JA-81 |
| | ) | |
| Stephanie C., | ) | Honorable |
| | ) | Paula A. Gomora, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice McDade and Justice Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Trial court's finding that mother was unfit for failing to make reasonable progress during the specified nine-month period was not against the manifest weight of the evidence.

¶ 2     Respondent, Stephanie C., appeals from an order of the Will County circuit court finding her to be an unfit parent of her minor children, Gi. G., Ga. G., and G.G., under sections 1(D)(b)

and 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(b), (D)(m)(ii) (West 2020)) and terminating her parental rights. On appeal, respondent claims that the trial court's unfitness finding was against the manifest weight of the evidence. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4        On May 16, 2018, the State filed petitions for adjudication of wardship alleging that Gi. G. (born September 13, 2012), Ga. G. (born November 28, 2014), and G.G. (born October 3, 2015) were neglected minors due to an environment injurious to their welfare (705 ILCS 405/2-3 (West 2018)). The petitions included allegations that (1) the children were homeless, (2) respondent was found heavily intoxicated in a van with the children, and (3) respondent was currently in the custody of the Will County Adult Detention Facility. The petition also alleged that respondent and the children's father had a long history of domestic violence. The trial court conducted a shelter care hearing and found probable cause to believe that the children were neglected.

¶ 5        On June 25, 2018, DCFS established a service plan for respondent. According to the plan, respondent was required to participate in substance abuse treatment and participate in random toxicology screenings given her history of alcohol abuse. The plan also recommended individual psychotherapy, comprehensive parenting education, and domestic violence counseling.

¶ 6        On August 15, 2018, an adjudication order was entered finding the minors neglected. After a September 19, 2018, hearing, the court entered a dispositional order finding respondent unfit and unable to care for, protect, train, or discipline the minor children. The order noted that respondent had not completed services. The court made the children wards of the court and appointed the Department of Children and Family Services (DCFS) as the children's guardian and custodian. The court also instructed respondent to cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that led to removal, or risk termination of parental rights.

¶ 7    The trial court held a permanency review hearing on July 9, 2019, and reviewed the May 28 service plan report submitted by caseworker Michael Krueger. The report covered respondents efforts from November 2018 through May 2019 and stated that respondent was making "satisfactory progress." However, upon review of the report, the trial court noted that Krueger failed to provide any documentation to support his ratings and that his assessment of respondent's progress was completely contradicted by the Court Appointed Special Advocate's (CASA) report. The court then addressed the caseworker directly and stated, "[s]o with the garbage that you have handed me, what am I supposed to do with it?" In response to the court's inquiry, the State argued that the documentation provided in the record from the counseling centers, parenting classes, and domestic violence services indicated that respondent had not made reasonable progress. The trial court agreed and entered a finding that respondent had not made progress.

¶ 8    Orders following subsequent permanency hearings on December 17, 2019, and June 17, 2020, were also entered, in which the court found that respondent failed to make reasonable efforts or progress toward returning the minors home.

¶ 9    On June 24, 2020, the State moved to terminate respondent's parental rights. The motion alleged that respondent was an unfit parent under the Adoption Act because she: (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare (750 ILCS 50/1(D)(b) (West 2020)); (2) failed to make reasonable efforts to correct the conditions that were the basis for removal of the children during the period of August 2018 through May 2019 (750 ILCS 50/1(D)(m)(i) (West 2020)); (3) failed to make reasonable progress toward the return of the children during the period between August 2018 and May 2019 (750 ILCS 50/1(D)(m)(ii) (West 2020)); and (4) failed to make reasonable progress toward the return of the children during the period between June 2019 and March 2020 (750 ILCS 50/1(D)(m)(ii) (West 2020)). The

3

motion also alleged that it was in the children's best interests to terminate respondent's parental rights.

¶ 10    On June 9, 2021, the trial court commenced the fitness hearing on the motion to terminate. At the beginning of the hearing, the State noted that respondent and the children's father were not present. Respondent's attorney stated that respondent had been charged with a felony in January 2021 and he did not know her custody status. Approximately twenty minutes later, respondent and the father entered the courtroom together.

¶ 11    The State called Krueger to the stand. He testified that he was the caseworker assigned to the children's case since November 2018. The children came into DCFS care after four of the minors were found in a van with respondent intoxicated and asleep behind the wheel. According to the terms of the initial service plan, respondent completed a substance abuse program with South Suburban Counsel in 2018 while she was incarcerated. Since she was released from prison, respondent had relapsed in June 2019, September 2019, and January 2021. Based on her continued alcohol abuse, respondent was referred for further substance abuse treatment. She did not complete the substance abuse reassessment.

¶ 12    Krueger testified that respondent last visited with the minors in March 2020. Although respondent had completed a parenting class, Krueger did not observe appropriate parenting skills during the visits. Respondent was not consistent with the children and she was unable to properly control them. In March 2020, visits with the children were suspended due to her inability to control her physical and verbal aggression and her failure to complete her reassessment. Krueger also testified that during the time he was assigned to the case, respondent failed to establish appropriate housing for her children. She moved three or four times and did not contact him regarding any of the moves.

¶ 13  Krueger testified that respondent also failed to address the domestic violence issues she had with the children's father. Based on information provided to DCFS, he believed respondent and the father were living together at the father's house in Ottawa. Although respondent attended domestic violence counseling, respondent did not learn from the counseling sessions because she continued to have a relationship with her abuser.

¶ 14  On cross-examination by respondent's counsel, Krueger agreed that respondent completed parenting classes and attended two out of four sessions required for a mental health evaluation. Krueger testified that respondent had three convictions for driving under the influence (DUI) of alcohol, the most recent one in January 2021. In his opinion, respondent was an alcoholic. Krueger had not spoken with respondent since her last DUI.

¶ 15  Krueger agreed that respondent completed some of the services required but he noted that she failed to make progress because she did not implement the skills that counseling provided. For example, even though she attended substance abuse treatment, she relapsed three times, and although she completed domestic violence services, she had a domestic altercation in August of 2019 with paramour who was not the children's father.

¶ 16  On redirect, Krueger testified that respondent had not advanced far enough to have unsupervised visitation. He did not know where respondent was living at the time of the hearing. To determine if respondent's living arrangements were appropriate for the children, Krueger needed to evaluate respondent's residence, which he could not do without knowing where respondent resided. Krueger testified that the trial court's statement that his 2019 permanency review report was garbage was because he based his "satisfactory" rankings in the report on respondent's self-reporting. When the deficiencies were called to his attention, he attempted to verify the information respondent provided and was unable to do so.

¶ 17	The children's father testified that he lived in Ottawa. He denied that respondent lived with him but agreed that he rode with respondent to the hearing that day. He admitted that he had been convicted of more than one case of domestic violence against respondent.

¶ 18	Respondent testified that she went to the father's residence in Ottawa "sometimes" to stay with him, but most of the time she stayed with her sister in a hotel. Respondent claimed that she completed inpatient and outpatient substance abuse services at Stepping Stones. In addition, she completed 4 weeks of substance abuse rehabilitation, 12 weeks of domestic violence services, and 12 weeks of general therapy.

¶ 19	Respondent claimed that she never received referrals from Krueger and had to find services for herself. She testified that during COVID her supervised visitations were suspended because Krueger "couldn't get somebody to supervise the calls." She claimed that she attempted to call Krueger frequently during the pendency of the case, and he refused to answer his phone or return her calls.

¶ 20	Respondent admitted that she received a DUI in January 2021 in La Salle County. She realized she needed help because she was an alcoholic and completed a substance abuse reassessment in February 2021. Respondent also acknowledged that she was the victim of domestic violence by a man named, Kendall J. in August 2019. She claimed that she severed all ties with Kendall and had refrained from any other inappropriate domestic violence contact since that time.

¶ 21	On cross-examination, respondent admitted that she "sometimes" stayed with the children's father at his house. She testified that she has been with him for 23 years, and she "will keep being with him."

¶ 22    At the conclusion of the hearing, the trial court found that the State proved respondent was unfit by clear and convincing evidence on two of the four grounds alleged in the motion to terminate. The court found respondent unfit for failing to make reasonable progress toward the return of the children from June 2019 to March 2020, noting that respondent relapsed twice in her substance abuse treatment during the relevant period and continued to have a relationship with the father despite a history of domestic abuse. The court also found respondent unfit for failing to maintain a reasonable degree of interest, concern, or responsibility for the children's welfare.

¶ 23    After finding respondent unfit, the trial court set the matter for a best-interest determination. A hearing was held on August 2, 2021, and the court found that it was in the best interests of Gi. G, Ga. G., and G.G. that respondent's parental rights be terminated.

¶ 24                                            II. ANALYSIS

¶ 25    On appeal, respondent contends only that the trial court erred by finding her unfit and should not have given any credibility to the caseworker's testimony.

¶ 26    Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2020)), the involuntary termination of parental rights is a two-step process. First, the State must prove by clear and convincing evidence that the parent is "unfit," as defined in section 1(D) of the Adoption Act. 705 ILCS 405/2-29(2), (4) (West 2020); *In re C.N.*, 196 Ill. 2d 181, 208 (2001). If the trial court finds that a parent is unfit, the State must then prove that it is in the children's best interests to terminate the parents' rights. *In re E.C.*, 337 Ill. App. 3d 391, 401 (2003). In this case, respondent does not challenge the best-interest determination.

¶ 27    A finding of unfitness will stand if supported by any one of the statutory grounds set forth in section 1(D) of the Adoption Act. *In re Konstantinos H.*, 387 Ill. App. 3d 192, 203-04 (2008). Here, the trial court found respondent unfit on the basis of two grounds: (1) failure to make

7

reasonable progress under section 1(D)(m)(ii), and (2) failure to maintain a reasonable degree of interest, concern, or responsibility under section 1(D)(b).

¶ 28    Section 1(D)(m)(ii) of the Adoption Act provides that a parent may be declared unfit if he or she "fails to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor under section 2-3 of the Juvenile Court Act." 750 ILCS 50/1(D)(m)(ii) (West 2020). "Reasonable progress" is an objective standard marked by a "demonstrable movement toward the goal of reunification." *In re J.A.*, 316 Ill. App. 3d 553, 565 (2000). A parent has made reasonable progress when:

> "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future,* will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directive previously given to the parent in order to regain custody of the child." (Emphasis in original.) *In re L.L.S.,* 218 Ill. App. 3d 444, 461 (1991).

In determining whether a parent made reasonable progress, a court may only consider evidence from the relevant period of time. *In re Reiny S.*, 374 Ill. Ap. 3d 1036, 1046 (2007).

¶ 29    The trial court is in the best position to observe the witnesses' demeanor and assess their credibility. *In re E.S.*, 324 Ill. App. 3d 661, 667 (2001). Thus, as a reviewing court, we will not disturb a trial court's finding of parental unfitness unless it is against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d at 208. A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly evident. *Id.*

8

¶ 30     Here, the evidence demonstrates that respondent failed to make reasonable progress during the relevant nine-month period of June 2019 through March 2020. During the relevant period of time, respondent failed to complete the requirements of the service plan or comply with the directives of the service plan in a demonstrable manner. While respondent had completed some of her services, she continued to consume alcohol, failed to complete her substance abuse reassessment, and maintained a relationship with the children's father who committed multiple acts of domestic violence against her. Moreover, the caseworker was unable to verify that respondent was employed, or that she had stable housing during the relevant nine-month period. By her own testimony, respondent moved three or four times between June 2019 and March 2020 and frequently stayed in a motel with her sister, housing that would be insufficient to meet the needs of the children. Simply stated, respondent was not close to fully complying with the directives of the service plan.

¶ 31     Respondent claims that the trial court's finding of unfitness was not supported by the evidence because the caseworker's testimony was not credible. Her argument, however, is misleading. The comments by the trial court, referring to Krueger's service plan ratings as "garbage," are from permanency review hearings in June and July of 2019 and relate to a specific report Krueger authored dated May 28, 2019. Subsequent permanency review reports indicated that Krueger supplied the proper documentation, verified respondent's participation, and made appropriate inquires as to respondent's progress. Moreover, nothing in the record indicates that Krueger's fitness hearing testimony regarding respondent's progress between June 2019 and March 2020 was inaccurate or unreliable.

¶ 32     Given the above evidence, the trial court's finding that respondent failed to make reasonable progress toward the return of the children during the period of June 2019 to March

2020 was not against the manifest weight to the evidence. Since we have upheld the trial court's finding of unfitness based on respondent's failure to make reasonable progress, the remaining statutory ground need not be addressed. See *In re Konstantinos H.*, 387 Ill. App. 3d at 203-04. Again, we note that respondent did not appeal the trial court's finding that it was in the children's best interests to terminate respondent's parental rights. We therefore affirm the trial court's order terminating respondent's parental rights to Gi. G., Ga. G., and G.G.

¶ 33                                          III. CONCLUSION

¶ 34          The judgment of the circuit court of Will County is affirmed.

¶ 35          Affirmed.